# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 23, 2011

No. 09-30763

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

LARRY WRIGHT,

Defendant–Appellant

Appeal from the United States District Court
for the Middle District of Louisiana

Before WIENER, GARZA, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Larry Wright was found guilty by a jury of (1) knowingly and intentionally attempting to possess with the intent to distribute cocaine and (2) possession of a firearm in furtherance of drug trafficking.  He appeals the district court's instruction to the jury, exclusion of evidence regarding his theory of defense, and denial of his motion for a new trial.  Wright argues that he is immune from prosecution under the Controlled Substances Act ("CSA"), 21 U.S.C. § 885(d), for his attempt to buy narcotics because he was then a deputy sheriff with the East Baton Rouge Parish Sheriff's Office ("EBRSO") and was "lawfully engaged in the enforcement of" the controlled substance laws.  Wright asserts that the district court abused its discretion when it instructed the jury that Wright could be

No. 09-30763

found not guilty only if he was authorized by an appropriate official to participate in the activity charged in the indictment and when it granted the government's motion in limine excluding evidence of Wright's prior assistance with narcotics investigations.

Section 885(d) does not give blanket immunity to Wright, who was not authorized to procure controlled substances outside of his role as a jailer at the parish prison, and the district court did not err in instructing the jury that Wright needed authorization to commit the conduct charged in the indictment in order to claim the defense. For this reason, we affirm the district court's jury instruction, its grant of the government's motion in limine, and its denial of Wright's motion for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Events Leading Up to the Arrest and Indictment

Wright was a deputy sheriff with the EBRSO during the time leading up to his arrest. Wright worked as a corrections officer in the Corrections Division, guarding the prisoners in custody at the parish prison and maintaining control of the prison. Wright's duties did not involve narcotics investigations outside the parish prison. Through a childhood friend, Wright came into contact with Chris Cordasco, a man who was arrested in 2005 on a firearms charge by local authorities and subsequently became an informant for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") in June 2006. Around June 14, 2006, Wright offered to help Cordasco get the firearms charge dropped in exchange for $5,000. Cordasco contacted his ATF agent regarding Wright's offer, after which ATF began its investigation of Wright. Wright and Cordasco eventually negotiated a deal where Cordasco would pay Wright $2,500 and one quarter kilogram of cocaine in exchange for Wright getting the charges dropped.

During this time, Wright spoke multiple times with EBRSO Sergeant Eric Jones, who worked as a detective in the Narcotics Division. Wright told Jones

that he had been offered cash and cocaine to get a state charge dropped, and Jones told Wright to leave the situation alone and not to do anything until he could get more information. Wright met Cordasco at a public parking lot on June 21 just after 5:15 p.m. to make the deal. ATF agents had installed surveillance equipment in Cordasco's car and on Cordasco's person. Wright was arrested just before he retrieved synthetic cocaine from the trunk of Cordasco's car, and officers recovered on Wright's person his loaded service weapon and $2,500 given to him by Cordasco.

**B.    Trial**

A superceding indictment charged Wright with (1–3) three counts of use of a facility in interstate commerce to promote an unlawful activity, (4) knowingly and intentionally attempting to possess with the intent to distribute cocaine, and (5) possession of a firearm in furtherance of a drug trafficking crime. The district court dismissed the first three counts before trial on the government's motion.

Before trial, Wright gave notice that he intended to raise the public authority defense, which "is available when the defendant is engaged by a government official to participate or assist in covert activity," *United States v. Spires*, 79 F.3d 464, 466 n.2 (5th Cir. 1996) (citation omitted), and indicated he intended to call Jones and EBRSO Sheriff Elmer Litchfield in support of the defense. The government filed, and the district court granted, a motion in limine to prohibit Wright from introducing at trial "evidence that he assisted and provided information in criminal investigations unrelated to the facts and circumstances surrounding the charges against him." The court agreed that such evidence was irrelevant to whether Wright was authorized to engage in the conduct charged in the indictment. The district court denied Wright's motion to reconsider.

No. 09-30763

Wright initially requested a jury instruction based on the public authority defense but withdrew this defense and submitted a substitute jury instruction ostensibly based on 21 U.S.C. § 885(d)—which grants immunity from prosecution to "duly authorized" state officials "lawfully engaged" in the enforcement of a controlled-substance law—suggesting the jury be instructed that:

> No criminal liability shall be imposed upon any duly authorized officer of any political subdivision of a State, who shall be lawfully engaged in the enforcement of any law or municipal ordinance relating to controlled substances.
>
> In each parish in Louisiana an elected sheriff is the chief law enforcement officer in the parish. The sheriff grants commissions to deputies which make them a duly authorized officer of the sheriff and charges them with the duty of preserving the peace and apprehending public offenders
>
> Some of the duties of a law enforcement officer include making arrests and detecting crime for the enforcement of the laws of the State of Louisiana.

The district rejected Wright's proposed instruction and charged the jury as follows:

> Now, the defendant in this case claims that if he committed the acts charged in the indictment, he did so during the course and scope of his employment as a law enforcement officer, and pursuant to lawful authority.
>
> You must consider whether the defendant should be found not guilty because he was authorized by a qualified official of the East Baton Rouge Parish Sheriff's Office to participate, or to assist in the activity charged in the indictment.
>
> As a matter of law, I instruct you that every holder of a law enforcement commission is not necessarily authorized by virtue of that commission, to commit illegal acts in connection with investigations of criminal activity.

4

No. 09-30763

> If you find that the defendant engaged in the activity charged in the indictment, pursuant to the authority granted to him by a qualified official of the East Baton Rouge Sheriff's Office, then you must find him not guilty under the indictment.

A jury trial was held June 23 to June 25, 2008, after which the jury convicted Wright on Counts 4 and 5 of the superceding indictment. After the trial, Wright filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 based on the district court's jury instruction and exclusion of evidence related to his assistance in other criminal investigations. The district court denied the motion. The district court sentenced Wright on August 21, 2009 to sixty months imprisonment on each count for a total of 120 months imprisonment and three years of supervised release on each count. Wright filed a timely notice of appeal.

## II. JURISDICTION AND STANDARDS OF REVIEW

This court has jurisdiction pursuant to 28 U.S.C. § 1291.

We "review a jury instruction for abuse of discretion, affording substantial latitude to the district court in describing the law to the jury." *United States v. Williams*, 610 F.3d 271, 285 (5th Cir. 2010).[1] In so doing, we "'consider whether the charge, as a whole, was a correct statement of the law and whether it clearly instructed the jurors as to the principles of the law applicable to the factual issues confronting them.'" *United States v. Santos*, 589 F.3d 759, 764 (5th Cir. 2009) (quoting *United States v. Orji-Nwosu*, 549 F.3d 1005, 1006 (5th Cir. 2008)). However, when a jury instruction hinges on a question of statutory construction,

---

[1] Federal Rule of Criminal Procedure 30(d) provides that jury instructions not timely objected to are reviewed for plain error. Where there is no earlier opportunity to object, objection to a jury instruction made after the jury retires is timely. *See United States v. Musgrave*, 483 F.2d 327, 334 & n.13 (5th Cir. 1973). The parties agree that Wright's counsel objected at the charging conference before the district court instructed the jury, and counsel objected on the record at the first opportunity after the district court instructed the jury, which was after the district court sent the jury to deliberate. The objection therefore was timely made.

5

the court's review is de novo. *See United States v. Guevara*, 408 F.3d 252, 257 (5th Cir. 2005) (citing *United States v. Ho*, 311 F.3d 589, 605 (5th Cir. 2002)).[2]

We review "'a district court's refusal to provide a requested jury instruction for an abuse of discretion. We will reverse the district court's decision only if the requested instruction (1) was a substantially correct statement of the law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a given defense.'" *Cooper Indus., Inc. v. Tarmac Roofing Sys., Inc.*, 276 F.3d 704, 714 (5th Cir. 2002) (quoting *United States v. McClatchy*, 249 F.3d 348, 356 (5th Cir. 2001)) (internal quotation marks and citations omitted).

We review a district court's evidentiary findings for abuse of discretion. *See United States v. White*, 972 F.2d 590, 598 (5th Cir. 1992). "The abuse of discretion must create the likelihood of prejudice to the defendant and the substantial right at issue must be made known to the court." *United States v. Lowery*, 135 F.3d 957, 959 (5th Cir. 1998) (citing *United States v. Tansley*, 986 F.2d 880, 886–87 (5th Cir. 1993)). Furthermore, "even if the district court erred in its evidentiary rulings, such error can be excused if it was harmless error." *Id.* (citing *United States v. Capote-Capote*, 946 F.2d 1100, 1105 (5th Cir. 1991)). "A nonconstitutional trial error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)) (internal quotation marks omitted).

---

[2] Wright seems to argue both that the district court instructed the jury on the public authority defense rather than on § 885(d) and that the instruction was an incorrect statement of the immunity provided by § 885(d). Under either an abuse of discretion or de novo standard of review, Wright's challenge to the jury instruction fails.

No. 09-30763

Federal Rule of Criminal Procedure 33 provides that a district court may vacate a judgment and grant a new trial "if the interest of justice so requires." In this Circuit, the generally accepted standard is that a new trial ordinarily should not be granted "unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict." *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004) (citing *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997)). "A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant." *Id* (citation omitted). We review for an abuse of discretion. *O'Keefe*, 128 F.3d at 893.

## III.  ANALYSIS

**A.   The District Court's Jury Instruction and Failure To Give Wright's Proposed Jury Instruction**

Before trial, Wright changed his defense to argue immunity from prosecution under 21 U.S.C. § 885(d).  Section 885(d) provides:

> Except as provided in sections 2234 and 2235 of title 18, no civil or criminal liability shall be imposed by virtue of this subchapter upon any duly authorized Federal officer lawfully engaged in the enforcement of this subchapter, or upon any duly authorized officer of any State, territory, political subdivision thereof, the District of Columbia, or any possession of the United States, who shall be lawfully engaged in the enforcement of any law or municipal ordinance relating to controlled substances.

Wright argues that he was a "duly authorized" Louisiana officer by virtue of his commission as a deputy sheriff in the EBRSO and that, as a deputy sheriff arguably authorized to enforce the drug laws, the only inquiry into whether he is "lawfully engaged" in the enforcement of the drug laws was whether he intended to act as a law enforcement officer when he engaged in the conduct charged in the indictment.  The district court, however, gave a jury instruction that Wright argues is impermissibly based on the public authority defense.  By instructing the jury that Wright was entitled to a verdict of not guilty if he was

No. 09-30763

authorized by a qualified EBRSO official to engage in the conduct alleged in the indictment, Wright argues the district court gave an incorrect statement of the law such that the court abused its discretion.

Section 885(d) is silent as to what it means to be a "duly authorized" state officer "lawfully engaged in the enforcement of" the controlled substance laws. The parties argue, to different effect, that these terms are given meaning through a state's statutes regarding state officials and through other rules and policies that govern the actions and duties of law enforcement officers.[3]  We agree that these terms require the application of a state's laws to determine the status of the state official and the legality of the state official's actions, a conclusion that is supported by *United States v. Fuller*, 162 F.3d 256 (4th Cir. 1998), one case cited by Wright in support of his statutory interpretation argument.  In *Fuller*, the Fourth Circuit in dicta determined that § 885(d) immunity did not apply to a mayor engaged in illegal drug transactions because his duties as provided by state law did not include enforcing the drug laws.  *Id.* at 262.  Nor is this approach contradicted by *United States v. Reeves*, 730 F.2d 1189 (8th Cir. 1984), also cited by Wright.  In *Reeves*, the Eighth Circuit affirmed a final judgment upon a jury verdict against a county sheriff in Arkansas for distributing marijuana, where the sheriff's intent to distribute outside of his law enforcement duties was a question for the jury.  *Id.* at 1197.  In that case, however, there does not appear to have been a dispute that the sheriff's official job duties included enforcement of the drug laws.  Rather, the question for the

---

[3] The government argues that 21 C.F.R. § 1301.24 further defines the exception to criminal and civil liability for state officers, and that scope is defined with reference to the state officer's official duties.  By its own terms, section 1301—titled "Registration of Manufacturers, Distributors, and Dispensers of Controlled Substances"—applies to sections 301–04 and 1007–08 of the CSA, codified at 21 U.S.C. §§ 821–24, 957–58.  *See* 21 C.F.R. § 1301.01 (stating scope of section 1301).  The government has not provided any legal support for the proposition that section 1301.24 applies to § 885(d), and we decline to so hold.

No. 09-30763

jury was whether the sheriff was performing his duties or illegally selling drugs.

Here, Wright appeals the district court's refusal to instruct the jury that Wright was authorized by virtue of his commission as a deputy sheriff to conduct undercover drug transactions. We will therefore look to Louisiana law to determine whether Wright is covered by § 885(d) and whether the question of Wright's intent should have gone to the jury.

Under Louisiana Revised Statute § 40:2402 governing the commission of peace officers:

> (3)(a) "Peace officer" means any full-time employee of the state, a sheriff, or other public agency, whose permanent duties actually include the making of arrests, the performing of searches and seizures, or the execution of criminal warrants, and is responsible for the prevention or detection of crime or the enforcement of the penal, traffic, or highway laws of this state, but not including any elected or appointed head of a law enforcement department.
>
> (b) "Peace officer" shall also include those sheriff's deputies whose duties include the care, custody, and control of inmates.

The statutory provision discussing the "Sheriff keeper of [the] jail" provides:

> Each sheriff shall be the keeper of the public jail of his parish, and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders.

LA. REV. STAT. ANN. § 15:704. This section appears in Title 15 of the Louisiana revised statutes ("Criminal Procedure") in Chapter 7 ("Prisons and Correctional Institutions"), Part I ("Prisons and Prisoners in General").

Even taking a broad view of section 15:704 and applying it outside the correctional context and to sheriff deputies, Wright was limited to using lawful means to enforce the peace—not unlawful means to gather evidence to obtain an arrest. Furthermore, Wright was a "peace officer" for purposes of Louisiana law because he was a sheriff's deputy whose duties included the care, custody, and

control of inmates as a jailer at the parish prison under subsection (b) of section 40:2402. *See* LA. REV. STAT. ANN. § 33:1433 (deputy sheriff appointed by sheriff of parish). Section 40:2402 assumes that deputy sheriffs have different permanent duties and that jailers' duties do not include law enforcement activities nor the prevention or detection of crime or enforcement of the penal laws. Unlike the sheriff in *Reeves*, Wright's statutory or formal duties as a deputy sheriff and parish jailer did not include engaging in covert undercover narcotics investigations. Nor does Louisiana otherwise support the contention that any deputy sheriff can break federal drug laws in the course of his own independent investigations in order to obtain evidence to make an arrest.[4] Regardless of whether the scope of Wright's authority determines whether he was "duly authorized" or could have been "lawfully engaged in" the conduct charged in the indictment, there is no evidence that Wright, as a jailer, was so authorized or had any such authority.

In short, the district court correctly instructed the jury that deputy sheriffs are not automatically entitled to violate controlled substances laws in criminal investigations. The district court also correctly explained to the jury that Wright could have been authorized in the particular case to engage in a covert drug deal. Wright presented evidence at trial that he was in contact with Jones about a possible drug investigation, and if he was indeed authorized to engage in the narcotics transaction with Jones, § 885(d) immunity would have applied. Whether Wright subjectively believed he was legally attempting to possess narcotics in furtherance of a criminal investigation is irrelevant if he lacked that authority, as was the case with the mayor in *Fuller*. The district court also did

---

[4] That Wright had statutory authority to make arrests under article 213 of the Louisiana Code of Criminal Procedure does not support the argument that he had authority to initiate investigations or engage in narcotics investigations for the purpose of obtaining evidence in order to make an arrest.

No. 09-30763

not abuse its discretion in denying Wright's proposed jury instruction, given that it was both a substantially incorrect statement of the law and was already substantially covered by the instruction given.

## B.   The Government's Motion in Limine and Wright's Motion for a New Trial

Wright argues that he was prevented from presenting testimony of witnesses with whom he had previously engaged in similar investigative conduct. Yet whether Wright previously engaged in investigations is irrelevant to the question of whether he was authorized in this instance to possess narcotics in the course of a criminal investigation. The district court therefore did not abuse its discretion in granting the government's motion in limine. Excluding evidence that Wright had previously helped in investigations did not create a likelihood of prejudice to Wright or have a substantial and injurious effect on the jury's verdict.

Nor did the district court abuse its discretion in denying Wright's motion for a new trial pursuant to Rule 33. The district court correctly instructed the jury and did not abuse its discretion in granting the government's motion in limine. Furthermore, evidence at trial showed that Wright did not intend to enforce the controlled substance laws and that he instead intended to take money and drugs in exchange for promising to get Cordasco's state charges dropped. There would not be a miscarriage of justice for the verdict to stand because the weight of the evidence does not preponderate against the verdict.

## IV.  CONCLUSION

As a deputy sheriff jailer, Wright was not authorized under Louisiana law to engage in his own rogue narcotics investigations and possess controlled substances outside the scope of his job duties. The district court properly instructed the jury that Wright must be found not guilty of the conduct charged in the indictment if he was authorized to engage in that conduct. The district

11

No. 09-30763

court did not abuse its discretion in granting the government's motion in limine regarding Wright's prior assistance with narcotics investigations, or in denying Wright's motion for a new trial.

AFFIRMED.