# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 3, 2013

Lyle W. Cayce
Clerk

No. 11-51028

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ERNEST EDWARD WAMPLER,

Defendant - Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, GARZA, and ELROD, Circuit Judges.

PER CURIAM:

The Sex Offender Registration and Notification Act ("SORNA") requires a sex offender to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). A jury found the defendant, Ernest Edward Wampler, guilty of failing to comply with this registration requirement. Wampler argues that we should vacate his conviction because the district court's instruction to the jury erroneously defined the term "resides," and constituted harmful error. We find no reversible error in the district court's instruction and, accordingly, AFFIRM Wampler's conviction.

No. 11-51028

I.

Wampler was charged with (1) failing to register as a sex offender in North Carolina in March 2009 after he moved there from Texas, and (2) failing to register in Texas in March and April 2011 when he returned from North Carolina. At trial, the parties stipulated that Wampler had a 2001 conviction for sexual assault of a child and that he was therefore required to register under SORNA.

The government called six witnesses in support of its case. First, Michael Jarman, an examiner for the North Carolina Department of Motor Vehicles ("DMV"), testified about the procedures a person must follow to obtain a North Carolina state identification card. Jarman's testimony revealed that Wampler obtained a North Carolina state identification card on March 20, 2009. Jarman further explained that when an applicant seeks a state identification card, his office must search the National Sex Offender Registry unless the applicant states that he has resided in North Carolina for more than one year. Wampler's DMV record showed that, when he got his identification card, he informed the examiner that he had lived in North Carolina for over one year. The government also introduced testimony from Joshua Hickman, an agent with the North Carolina State Bureau of Investigation. Hickman testified that Wampler never registered as a sex offender in North Carolina.

Next, the government called two Texas officials to testify, beginning with Donna McGinnis, a retired registering agent for the Texas sex offender registry. McGinnis explained that she would meet in person with sex offenders before their release from prison to explain their obligation to register. Even though McGinnis dealt primarily with Texas law, she advised offenders that it was a

No. 11-51028

federal offense to move across state lines without registering. McGinnis further testified that she personally met with Wampler and filled out his paperwork. Wampler's paperwork indicated that he expected to reside, upon release, at the Salvation Army in Midland, Texas; or, if he decided not to live there, in the Bronx, New York. Wampler initialed a form that informed him that he was required to register anywhere he intended to reside for more than seven days and had seven days to register any changes of address within Texas. The second Texas official to testify was Vincent Castilleja, the sex offender registration coordinator for the Texas Department of Public Safety ("DPS"). Castilleja explained that sex offenders have a duty to register in their local jurisdictions, which then forward the information to DPS within three days. The government introduced DPS documents showing that on August 2, 2007, Wampler registered his address as a hotel in Midland, Texas, and that on August 6, 2007, Wampler indicated that he was moving to Washington, D.C. Castilleja testified that DPS had no further documents regarding Wampler.

The government also introduced testimony from Sharon Babcock, Wampler's son's grandmother. In March 2011, Wampler called Babcock and informed her that he was in Florida but wanted to visit his son in Midland. Soon after this call, Wampler arrived in Midland. Babcock allowed Wampler to live in a vacant house she owned, in return for his renovation work on it. Babcock at one point testified that Wampler stayed in Midland for about a month, but at another point stated that he may not have been in Midland for thirty days. Nevertheless, Babcock kept a ledger recording money she gave to Wampler while he was in town, and it contained entries dating from March 20, 2011, to April 4,

No. 11-51028

2011, the day Babcock took Wampler to the bus station so that he could leave town.

Finally, Jason Gullingsrud, a U.S. Marshal, testified that he and other Marshals found and arrested Wampler in Magnolia, Texas. According to Gullingsrud, the woman who owned the trailer in which Wampler was located told the Marshals that he had been there about a month.

Wampler took the stand in his own defense. He testified that following his release from prison on August 1, 2007, he did not tell the Midland police that he was moving to Washington, D.C.; rather, he told the police that he was going to visit friends there. He stated that he tried to register in Washington, D.C., but was advised that registration was unnecessary because he planned to be there fewer than seven days. Wampler testified that after leaving Washington, D.C., he traveled to Missouri, New Jersey, and New York. He stated that he never lived in North Carolina, but admitted that he got a state identification card because he needed some form of identification to cash checks. He also stated that the address he used to obtain the North Carolina identification was that of a friend for whom he put a bill in his name and he used the house at that address as a place to sleep when he would pass through town. Wampler testified that he never considered himself to be a resident of any place other than Midland, Texas. He also admitted that in part of March and April 2011 he lived at Babcock's house, as she had testified, and that his stay there lasted more than two weeks; however, he did not feel he had to register again in Midland because he was already registered there.

Following the close of the case and outside of the presence of the jury, the district court explained that the Fifth Circuit Pattern Jury Instructions have no standardized SORNA instruction. Therefore, the district court formulated an

4

instruction based on its review of instructions from other jurisdictions. Relevant here, the district court's instruction included the following definition:

> "Resides" means the location of an individual's home or other place where that individual habitually lives, even if the person has no home or fixed address in that state or no home anywhere. Places where a person "habitually lives" include places in which that person lives with some regularity, not just the place that the person calls his home address or place of residence. A person may reside in more than one place and must include in his registration each place where he resides.

Wampler's attorney objected to this definition. He argued that the district court should instruct the jury using SORNA's more limited definition of the term "resides." The government responded that the district court's instruction "add[ed] a little bit of gloss" to the definition in SORNA but argued that it was "absolutely appropriate in this case." The district court overruled Wampler's objection and used the definition set out above.

The jury found Wampler guilty on both counts charged in the indictment. The district court sentenced Wampler to concurrent terms of thirty-eight months' imprisonment and twenty-five years of supervised release. Wampler timely filed a notice of appeal.

## II.

### A.

Generally, we review preserved error in a district court's instruction for abuse of discretion, affording substantial latitude to the court in describing the law to the jury. *United States v. Williams*, 610 F.3d 271, 285 (5th Cir. 2010) (citing *United States v. Santos*, 589 F.3d 759, 764 (5th Cir. 2009)). Under this standard, we consider "whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of the law applicable to the factual issues confronting them." *United States v.*

No. 11-51028

*Brooks*, 681 F.3d 678, 697 (5th Cir. 2012) (quoting *United States v. Kay*, 513 F.3d 432, 446 (5th Cir. 2007)).  But we review *de novo* an instruction that hinges on a question of statutory construction.  *United States v. Wright*, 634 F.3d 770, 774 (5th Cir. 2011) (citing *United States v. Guevara*, 408 F.3d 252, 257 (5th Cir. 2005)).[1]

B.

Congress enacted SORNA to establish a "comprehensive national system for the registration of [sex] offenders."  42 U.S.C. § 16901.  To that end, SORNA requires sex offenders to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."  § 16913(a).  For the purposes of this registration requirement, "[t]he term 'resides' means, with respect to an individual, the location of the individual's home or other place where the individual habitually lives."  § 16911(13).  If a sex offender changes his residence—or his name, employment, or student status—he must within three business days after the change "appear in person in at least 1 jurisdiction involved . . . and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry."  § 16913(c).  SORNA's registration obligations are criminally enforceable: A sex offender who "travels in interstate or foreign commerce" and then "knowingly fails to register or update a registration as required by [SORNA] shall be fined . . . or imprisoned not more than 10 years, or both."  18 U.S.C. § 2250(a); *see Carr v. United States*,

---

[1] Wampler contends at some points in his brief that "the district court abused its discretion," while at other points he argues that the district court simply committed an "error."  We conclude that Wampler's challenge to the jury instruction fails under either an abuse of discretion or *de novo* standard.  *See Wright*, 634 F.3d at 774 n.2 (recognizing that a defendant's challenge to a jury instruction would fail under either an abuse of discretion or *de novo* standard of review).

No. 11-51028

130 S. Ct. 2229, 2236 (2010) ("Once a person becomes subject to SORNA's registration requirements . . . that person can be convicted under § 2250 if he thereafter travels and then fails to register.").

Congress specified that "[t]he Attorney General shall issue guidelines and regulations to interpret and implement [SORNA]." 42 U.S.C. § 16912(b). Pursuant to this directive, the Department of Justice published comprehensive SORNA guidelines. *See* The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030 (July 2, 2008) ("the Guidelines"). Regarding SORNA's definition of "resides," the Guidelines explain that "a sex offender must register: [1] In any jurisdiction in which he has his home; and [2] In any jurisdiction in which he habitually lives (even if he has no home or fixed address in the jurisdiction, or no home anywhere)." 73 Fed. Reg. at 38,061. The Attorney General recognized that "[t]he scope of 'habitually lives' in this context is not self-explanatory and requires further definition"; therefore, the Guidelines expound upon the proper interpretation of the term:

> "Habitually lives" . . . should be understood to include places in which the sex offender lives with some regularity, and with reference to where the sex offender actually lives, not just in terms of what he would choose to characterize as his home address or place of residence for self-interested reasons. The specific interpretation of this element of "residence" these Guidelines adopt is that a sex offender habitually lives in the relevant sense in any place in which the sex offender lives for at least 30 days. Hence, a sex offender resides in a jurisdiction for purposes of SORNA if the sex offender has a home in the jurisdiction, or if the sex offender lives in the jurisdiction for at least 30 days. Jurisdictions may specify in the manner of their choosing the application of the 30-day standard to sex offenders whose presence in the jurisdiction is intermittent but who live in the jurisdiction for 30 days in the aggregate over some longer period of time. Like other aspects of SORNA, the requirement to register sex offenders who "reside" in the jurisdiction as defined in [42 U.S.C. § 16911(13)] is a minimum requirement, and jurisdictions in their discretion may require

No. 11-51028

registration more broadly (for example, based on presence in the jurisdiction for a period shorter than 30 days).

*Id.* at 38,061–62. The Guidelines also reiterate that "a sex offender who enters a jurisdiction in order to make his home or habitually live in the jurisdiction must . . . register within three business days." *Id.* at 38,062.

C.

Wampler argues that it was unnecessary for the district court to define "resides" because the term is not outside the common understanding of jurors. He further asserts that the definition the district court chose to include in the jury instructions was erroneous because it exceeded the definition of "resides" in SORNA itself. In response, the government argues that the definition of resides is not necessarily unambiguous and that the district court's instruction was an accurate reflection of the law and fit the factual issues confronting the jury. We find no reversible error in the district court's instruction.

As an initial matter, we disagree with Wampler's contention that the district court erred by including a definition of "resides" in its instruction. We recognize that the Eighth Circuit held that a jury instruction omitting a definition of "resides" was not plain error. *United States v. Poitra*, 648 F.3d 884, 887 (8th Cir. 2011). Moreover, Wampler is correct that a district court "need not define specific statutory terms unless they are outside the common understanding of a juror or are so technical or specific as to require a definition." *United States v. Chenault*, 844 F.2d 1124, 1131 (5th Cir. 1988). But at least three considerations support the district court's decision to include a definition of "resides" in its instructions.

First, the text and structure of SORNA suggest that a court should include in its jury instructions at least the statutory definition of the term. After using the term "resides" in § 16913(a), which establishes a sex offender's obligation to

8

No. 11-51028

register, Congress could have left the meaning of that term open for interpretation based on common understanding, but it did not. Instead, Congress chose to explicitly define the term in § 16911(13). Second, the Guidelines recognize that "[t]he notion of 'residence' requires definition" for the purposes of SORNA. 73 Fed. Reg. at 38,061. Finally, in this particular case, including a definition of "resides" clarified the law as it relates to the factual issues that confronted the jury. *See Brooks*, 681 F.3d at 697–98. The charges against Wampler focused on where he "resided," and it was appropriate for the district court to provide the jury with some direction regarding the meaning of the term in this context. *See id.* at 697 (recognizing that "district courts 'enjoy substantial latitude in formulating a jury charge'" (quoting *United States v. Davis*, 609 F.3d 663, 689 (5th Cir. 2010)).

Wampler further argues that, even if some instruction defining "resides" was permissible, the district court's definition was flawed because it went beyond the definition in SORNA. Again, we disagree. The district court's definition of "resides" consisted of three sentences:

> [1] "Resides" means the location of an individual's home or other place where that individual habitually lives, even if the person has no home or fixed address in that state or no home anywhere.

> [2] Places where a person "habitually lives" include places in which that person lives with some regularity, not just the place that the person calls his home address or place of residence.

> [3] A person may reside in more than one place and must include in his registration each place where he resides.

All but the first clause of the first sentence in this three-part definition go beyond the statutory definition of the term. *Cf.* 42 U.S.C. § 16911(13). But the district court was not limited to instructing the jury with only the statutory definition; to conclude otherwise would require a district court to ignore the Guidelines that the Attorney General issued at the behest of Congress. *See*

9

No. 11-51028

§ 16912(b); 73 Fed. Reg. at 38,061–62. Because the district court's instruction was not inconsistent with SORNA, and because Wampler failed to allege the instruction misstated the Guidelines, we conclude there is no reversible error.[2]

## III.

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[2] We note that the second sentence in the district court's instruction does not mirror the Guidelines. The district court defined "habitually lives" to include places in which a person "lives with some regularity," but left open the question of what constitutes sufficient regularity. The Guidelines address that issue: "[A] sex offender habitually lives in the relevant sense in any place in which the sex offender lives for at least 30 days." 73 Fed. Reg. at 38,062. Even so, we need not decide whether the district court's omission of the thirty-day standard was erroneous because Wampler made no argument on that basis in the district court or on appeal. *See United States v. Delgado*, 672 F.3d 320, 329 (5th Cir. 2012) (en banc) (recognizing "the long-standing rule that a defendant must make an appropriate objection at trial in order to preserve an issue for appeal" and explaining that only "in very rare instances, [will] we . . . appl[y] the plain-error standard to errors neither preserved below *nor* argued on appeal" (citations omitted)); *see also Jimenez v. Wood Cnty., Tex.*, 660 F.3d 841, 845 (5th Cir. 2011) (en banc) (explaining that we have limited discretion to correct an unpreserved error in jury instructions).