FILED
United States Court of Appeals
Tenth Circuit

November 29, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

KENNETH JAMES HEBERT, a/k/a Keno,

     Defendant - Appellant.

No. 16-7000
(D.C. No. 6:15-CR-00050-JHP-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **HOLMES**, and **MORITZ**, Circuit Judges.
_____

Kenneth Hebert appeals his conviction following a jury trial for being a felon

in possession of an explosive device, in violation of 18 U.S.C. §§ 842(i)(1) and

844(a)(1) and (2). He asserts that the evidence was insufficient to sustain his

conviction. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

Hebert lived in a house in Hugo, Oklahoma, with Carney Hood, Hood's

girlfriend Lacy Miller, and Miller's two children. The house was condemned and the

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

occupants were told to leave. Sometime after they vacated the house, Ricky Britt, a Code Enforcement Officer, removed blankets covering a window so patrolling police officers could see if people were inside. Britt discovered a box of blasting caps in a bedroom, together with items that looked like bomb-building materials. He looked in the box and very gently picked out one of the items to confirm that it was a blasting cap. He then replaced it and called the police.

Hebert was indicted and charged with being a felon in possession of an explosive, which makes it unlawful for any person who has been convicted of a felony to "possess any explosive which has been shipped or transported in or affecting interstate . . . commerce." 18 U.S.C. § 842(i)(1). At trial, the government presented four witnesses. First, Britt testified about finding the box of blasting caps. Second, Lieutenant Steve Babcock, a Hugo police officer, testified that he responded to Britt's call reporting the box of blasting caps. Third, Miller testified about seeing the box in the house where she and Hebert had lived. And finally, Special Agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives, Ashley Stephens, related his interview with Hebert after his arrest, during which Hebert said he acquired the box of blasting caps when he cleaned out the shed of an acquaintance. Hebert told Agent Stephens that he took the box home and gave it to Hood, and that he did not know what was in the box. Agent Stephens also testified that a blasting cap is a primary explosive whose purpose is to initiate a secondary high explosive. Both officers described the warnings printed on the box of blasting caps.

2

At the close of the government's case, Hebert moved for a judgment of acquittal based on insufficient evidence. The court denied the motion. Hebert did not testify and the defense presented no evidence. The jury returned a guilty verdict. Hebert was sentenced to 63 months' imprisonment, followed by three years of supervised release. He timely appealed, arguing the evidence presented at trial that he knew the box contained explosive blasting caps was insufficient to convict him.[1]

**II**

"We review the denial of a motion for judgment of acquittal, and hence the sufficiency of the evidence to support the jury verdict, de novo." United States v. Alexander, 817 F.3d 1205, 1209 (10th Cir. 2016) (quotation omitted). This requires us to "view the evidence in the light most favorable to the government to determine whether a rational trier of fact could have found the elements of the offense beyond a reasonable doubt." Id. (quotation omitted). "[T]his court does not decide credibility issues or reweigh the evidence." United States v. Johnson, 821 F.3d 1194, 1201 (10th Cir. 2016). Rather, "[w]e accept the jury's resolution of conflicting evidence. As long as the possible inferences are reasonable, it was for the jury, not the court, to determine what may have occurred. The only question is whether the government's evidence, credited as true, suffices to establish the elements of the crime." Id. (citations, ellipsis, and quotations omitted).

---

[1] To the extent Hebert contends the government failed in its burden to prove that a blasting cap is an explosive as defined by 18 U.S.C. § 844(j), he stipulated before the district court that the blasting caps were explosives under federal law. Moreover, he has not attempted to refute Agent Stephens' testimony that the blasting caps were explosives.

## III

To establish Hebert's guilt under § 842(i)(1), the government was required to "prove beyond a reasonable doubt that: (1) [he] was previously convicted of a felony; (2) he thereafter knowingly shipped, transported, received or possessed an explosive; and (3) the possession was in or affecting interstate or foreign commerce." United States v. Markey, 393 F.3d 1132, 1135 (10th Cir. 2004). Only the second element of knowledge is in dispute; Hebert stipulated that he was a convicted felon, that the blasting caps were explosives, and that the blasting caps had traveled in interstate commerce.

Hebert argues that the evidence was insufficient to show he knowingly possessed explosives because two of the four trial witnesses testified that they thought the box found in Hebert's former residence contained something other than blasting caps. He relies on the testimony of Officer Britt that when he first looked at the box, he thought it contained shoelaces. Acknowledging Britt's unequivocal statement that, after he read the warnings on the box and looked at one of the items in the box, he knew they were blasting caps, Hebert nevertheless contends that Britt would not have picked one up if he truly believed they were blasting caps. And he misstates Britt's testimony by saying Britt did not know what was in the box until he read the writing on the individual blasting cap that he picked up. But Britt testified that it looked like shoelaces until he read the writing on the box that said blasting caps. Thus, the jury was fully justified in crediting Britt's testimony that he knew the box contained blasting caps. See Johnson, 821 F.3d at 1202.

4

Hebert next points to the testimony of his former housemate Miller. Miller testified that during her initial telephone interview with the police, she said she thought the box contained speaker wire. At trial, however, she stated that Hebert offered the box to Hood and said they were blasting caps. Hebert argues that if Miller had known the box contained blasting caps, she would not have permitted them near her children. This is mere speculation; there is no evidence of Miller's parenting policies. Again, we do not reweigh the evidence, but assess it in the light most favorable to the government.

Thus, Hebert's argument is that there was no evidence that he knew what the box contained—a position supported by two witnesses who also did not realize the box contained blasting caps. But Britt's testimony was clear: He knew the box contained blasting caps, so he called the police and guarded the box until it was removed from the house. Miller's testimony was less clear. She explained that she was untruthful during the telephone interview with the police because she did not want to become involved. Even though Miller changed her story, it was within the province of the jury to decide what part of her testimony to credit and what to reject. Cf. United States v. Cooper, 654 F.3d 1104, 1115 (10th Cir. 2011) (holding court does not "weigh conflicting evidence or consider witness credibility," and witnesses' conflicting or differing accounts do "not necessarily render the evidence insufficient").

Hebert also contends that the jury was confused, as evidenced by a note they sent out during deliberations asking whether they were to determine that Hebert was

5

guilty of being a felon in possession of an explosive or that he was guilty of knowing he was in possession of an explosive. After consultation with counsel, the court responded that the jury had received all the law and evidence appropriate for their consideration. However, the issue on appeal is not jury confusion, but whether the evidence and the reasonable inferences to be drawn from it were sufficient to convict.

Furthermore, the writing on the box itself was sufficient evidence from which the jury could infer that Hebert knew the box contained blasting caps and the blasting caps were explosives. The following wording was clearly displayed on the box: "DANGEROUS EXPLOSIVES," "KEEP FROM CHILDREN," "LOCK UP BLASTING CAPS," and "HANDLE CAREFULLY." These cautions plainly printed on the outside of the box, together with Hebert's statement that he took the box home from the shed where he found it, gave rise to the reasonable inference that Hebert knowingly possessed an explosive device.

## IV

We **AFFIRM** Hebert's conviction.

Entered for the Court

Carlos F. Lucero
Circuit Judge