**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ISIAH BERNARD ADAMS,

    Defendant - Appellant.

No. 17-5048

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:13-CR-00132-GKF-1)**
_____

Submitted on the briefs:[*]

Barry L. Derryberry and William Patrick Widell, Jr., Assistant Federal Public Defenders, Tulsa, Oklahoma for Defendant-Appellant.

Kevin C. Leitch, Assistant United States Attorney, (R. Trent Shores, United States Attorney with him on the brief) Tulsa, Oklahoma, for Plaintiff-Appellee.
_____

Before **HARTZ**, **SEYMOUR**, and **PHILLIPS**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

One of the conditions of supervised release for Defendant Isiah Bernard Adams was that he comply with the Sex Offender Registration and Notification Act (SORNA), 34 U.S.C. §§ 20911–20932.[1]  The United States District Court for the Northern District of Oklahoma found that Defendant, who was homeless at the time, had violated that condition by failing to update his SORNA registration within three days of changing his residence to Tulsa.  He challenges the court's finding, arguing on appeal that the government offered no evidence that he had established his residence in Tulsa for SORNA purposes by residing there for 30 days or more.  Exercising jurisdiction under 28 U.S.C. § 1291, we hold that there was sufficient evidence and affirm.

## I.     BACKGROUND

Defendant pleaded guilty in 2014 for failing to register as a sex offender.  He was sentenced to 21 months in prison, followed by a five-year term of supervised release, which eventually began in November 2015.  One condition of his supervised release was that he "comply with the requirements of [SORNA]."  R., Vol. I at 10.

In January 2017, Sharla Belluomo, a Tulsa-based probation officer supervising Defendant, filed a petition (the Petition) alleging five violations of the terms of his supervised release.  The district court held a revocation hearing on April 5, 2017.  Defendant stipulated to four of the alleged violations but denied the allegation that he had violated SORNA by "fail[ing] to update his registration status when he changed

---

[1] On September 1, 2017, SORNA's placement within the U.S. Code shifted from 42 U.S.C. §§ 16911–16929 to its present placement in Title 34.  Both parties' briefs refer to Title 42, but we will cite SORNA provisions in their present location.

residences in July 2016." *Id.* at 14. He claimed that he had "just found . . . out" that homeless people could register as such under SORNA, and that people at a court building had told him that homeless people could not register. R., Vol. III at 12. In response, Belluomo testified that in July or August 2016, Defendant had returned to Tulsa after living in a facility in Oklahoma City under a "public law placement" because of a state failure-to-pay charge. *Id.* at 22. According to Belluomo, after Defendant reported that he was homeless, she had instructed him to "register as homeless," and he had acknowledged the need to do so and "told [her] that he was able to register weekly." *Id.* at 19. She further testified that before she submitted the Petition, she had been informed by the officer overseeing the Tulsa Police Department's sex-offender registry that Defendant had never registered, and had been informed by the person overseeing the state registry that Defendant had last registered in July 2016 in Oklahoma City.

The district court determined that Belluomo was credible and Defendant was not. It thus found that Defendant had failed to comply with SORNA. The court sentenced Defendant (based on all five violations alleged in the Petition) to 18 months in prison and an 18-month term of supervised release. Apparently believing that his sentence would be lower if there were no finding of a SORNA violation, Defendant appeals the finding.

II. ANALYSIS

Defendant argues in this court that there was no evidence that he changed his residence to Tulsa for SORNA purposes. He concedes that he did not raise this argument below, so we review only for plain error. *See United States v. Rios-Morales*, 878 F.3d 978, 987 (10th Cir. 2017). He must therefore show "(1) error, (2) that is plain, which (3)

3

affects [his] substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted). In our view, he has failed even to show error.

To assess Defendant's argument, we begin with a review of his legal obligations. Under SORNA, "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides . . . ." 34 U.S.C. § 20913(a). The Act defines *resides* to mean "the location of the individual's home or other place where the individual habitually lives." *Id.* § 20911(13). To keep the registration current, "[a] sex offender shall, not later than 3 business days after each change of . . . residence . . . , appear in person in at least 1 jurisdiction . . . and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry." *Id.* § 20913(c). Under 34 U.S.C. § 20914(a)(3), that information includes "[t]he address of each residence at which the sex offender resides or will reside."

As authorized by SORNA, *see id.* § 20912(b), the Attorney General has issued guidelines for interpretation of the statute. The guidelines include a thorough discussion of the statute's application to homeless persons. Section VIII recognizes that "[r]equiring registration only where a sex offender has a residence or home in the sense of a fixed abode would be too narrow to achieve SORNA's objective of 'comprehensive' registration of sex offenders, because some sex offenders have no fixed abodes." The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030, 38,061 (July 2, 2008) (SORNA Guidelines) (citation omitted). "For example," it notes, "a sex offender may be homeless, living on the street or moving from shelter to shelter, or

4

a sex offender may live in something that itself moves from place to place, such as a mobile home, trailer, or houseboat." *Id.* The section then explains:

> [SORNA § 20911(13)] accordingly defines "resides" to mean "the location of the individual's home or other place where the individual habitually lives." This entails that a sex offender must register . . . [i]n any jurisdiction in which he has his home; and [i]n any jurisdiction in which he habitually lives (even if he has no home or fixed address in the jurisdiction, or no home anywhere).

*Id.*

Section VIII also addresses the meaning of *habitually lives*. It observes that the term is not defined in the statute and "[a]n overly narrow definition would undermine the objectives of sex offender registration and notification under SORNA." *Id.*[2] The term therefore "should be understood to include places in which the sex offender lives with some regularity, and with reference to where the sex offender actually lives, not just in terms of what he would choose to characterize as his home address or place of residence

---

[2] The Guidelines illustrate the point with an example:

> [C]onsider the case of a sex offender who nominally has his home in one jurisdiction—e.g., he maintains a mail drop there, or identifies his place of residence for legal purposes as his parents' home, where he visits occasionally—but he lives most of the time with his girlfriend in an adjacent jurisdiction. Registration in the nominal home jurisdiction alone in such a case would mean that the registration information is not informative as to where the sex offender is actually residing, and hence would not fulfill the public safety objectives of tracking sex offenders' whereabouts following their release into the community.

SORNA Guidelines at 38,061–62.

5

for self-interested reasons." *Id.* at 38,062. The Guidelines then adopt the interpretation that "a sex offender habitually lives in the relevant sense in any place in which the sex offender lives for at least 30 days." *Id.* This Section also sets forth the timely-reporting requirement of the statute, saying that "a sex offender who changes his place of residence within a jurisdiction must be required to report the change within three business days." *Id.*

Section VI describes the sort of location information that transient sex offenders must provide. Although they have no residential address, "some more or less specific description should normally be obtainable concerning the place or places where such a sex offender habitually lives." *Id.* at 38,055. For example, the sex offender could provide "information about a certain part of a city that is the sex offender's habitual locale, a park or spot on the street (or a number of such places) where the sex offender stations himself during the day or sleeps at night, shelters among which the sex offender circulates, or places in public buildings, restaurants, libraries, or other establishments that the sex offender frequents." *Id.* at 38,055–56. Such information "serves the same public safety purposes as knowing the whereabouts of sex offenders with definite residence addresses." *Id.* at 38,056.

Defendant relies on our opinion in *United States v. Alexander*, 817 F.3d 1205 (10th Cir. 2016), in which we reversed a conviction because the jury was not instructed regarding the 30-day element of "habitually lives," *see id.* at 1213–15. We recommended the following jury-instruction language: "An offender 'habitually lives' in any place in which he intends to live with some regularity, or lives for at least 30 days, even if the

6

person has no home or fixed address or is homeless." *Id.* at 1215. Defendant's contention, as we understand it, is that the evidence at his revocation hearing would not support a finding that he resided in Tulsa for 30 days or intended to do so. We disagree.

The government's burden of persuasion in a revocation hearing is proof by a preponderance of the evidence. *See* 18 U.S.C. § 3583(e)(3). The government's burden was satisfied. It was uncontested that in July 2016 Defendant had registered as a sex offender in Oklahoma City. But then he came to Tulsa. Belluomo testified that beginning in July or August 2016 and lasting until December, when she lost track of him, she met with Defendant "on numerous occasions . . . in [her] office or in the community," R., Vol. III at 20; and in those meetings he reported that he had registered weekly as a sex offender in Tulsa. *Cf.* Okla. Stat. Ann. tit. 57, § 584(G) ("Any person subject to the provisions of the [Oklahoma] Sex Offenders Registration Act who is unable to provide a mappable address with a zip code . . . and registers as a transient shall report in person to the nearest local law enforcement authority every seven (7) days and provide to the local law enforcement authority the approximate location of where the person is staying and where the person plans to stay."). The government did not have to provide a particular address in Tulsa where Defendant was living. After all, the SORNA Guidelines recognize that offenders without "fixed abodes" still need to register. SORNA Guidelines at 38,055. The evidence was ample for the district court to infer that Defendant was "liv[ing] with some regularity" somewhere in Tulsa. *Id.* at 38,062. Since it is undisputed that Defendant never registered as a sex offender in Tulsa, the violation

of his condition of supervised release was proved.[3]

Defendant also argues that "the record does not support a finding that [Defendant] failed to update his registration within three business days after he supposedly changed his residence." Aplt. Br. at 12 (capitalization omitted). But he is not disputing that he failed to register in Tulsa. He appears to be saying only that because he did not change his residence, he did not need to update his registration. This argument adds nothing to the prior argument and it is no more successful the second time around.

III.    CONCLUSION

We **AFFIRM** the judgment of the district court.

---

[3] The government argues in the alternative that even if the evidence did not prove that Defendant had established a residence in Tulsa, the evidence certainly showed that he had changed his residence from his public placement in Oklahoma City, and that this change in itself would require a new registration somewhere. We need not address this argument because we affirm on the other ground.