FILED
United States Court of Appeals
Tenth Circuit

March 27, 2026

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

—————————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CREGG LENARD GAINES,

    Defendant - Appellant.

No. 25-5000
(D.C. No. 4:21-CR-00489-JFH-1)
(N.D. Okla.)

—————————————————————

**ORDER AND JUDGMENT**[*]
—————————————————————

Before **MATHESON**, **CARSON**, and **ROSSMAN**, Circuit Judges.
—————————————————————

Even if a court commits an error of constitutional dimension that the defendant preserves for appeal, we may affirm if the government can prove the error is harmless beyond a reasonable doubt.

Here, the district court admitted a video into evidence containing statements from an adverse witness who was not before the court. Defendant requested an opportunity to question the adverse witness. According to Defendant, the district court, in rejecting Defendant's request, failed to balance Defendant's constitutionally guaranteed right to confrontation against the government's good cause for denying it.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

We assume the district court erred by admitting the exhibit without engaging in the proper balancing of the interests. But ultimately, any error did not substantially impact the outcome because the district court would have reached the same conclusion without admitting or considering the testimonial statements in the video. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

After accepting a guilty plea from Defendant Cregg Gaines, the district court sentenced Defendant to a term of imprisonment followed by three years' supervised release

During Defendant's term of supervised release, multiple people called law enforcement about a disturbance in an apartment complex parking lot involving three males yelling at each other. Law enforcement learned that one person had a gun and was pointing it at one of the others. Callers also informed the officers that they heard gunshots and believed someone was shot. On scene, officers identified Eric Williams as the gunshot victim. Williams was uncooperative, but when officers placed Defendant next to Williams, he became upset and identified Defendant as his shooter. Officers spoke with several witnesses on scene who also identified Defendant as the shooter and then detained Defendant. Officers located spent shell casings, an empty ammunition box, an empty gun holster in Defendant's truck, and firearm accessories and cleaning equipment in Defendant's apartment. Officers did not locate the firearm. Id.

Defendant's probation officer filed a petition to revoke his supervised release. Probation alleged that Defendant committed three violations. But only two of these alleged violations are relevant to this appeal: (1) committing a new crime (the shooting); and (2) possessing a firearm. Defendant denied committing the violations.

At the revocation hearing, the government called two witnesses. First, it called Danielle Hunt—a probation officer who the probation office assigned to Defendant three days after the shooting. She testified that she spoke with Defendant about the shooting incident. Defendant admitted to drinking (although he denied being intoxicated) and getting into an altercation but denied possessing a firearm or shooting anyone. He also said that the gun holster and firearm cleaning equipment predated his original conviction.

Second, the government called Officer Omar Awad. He responded to the shooting after an officer provided an initial report informing him that an altercation had occurred and that someone shot another person in the leg. The government asked whether Awad knew the people involved in the altercation. Awad responded Cregg Gaines and Eric Williams. The government then asked, "in that initial report was there any indication about who was the victim and who was the shooter?" Defendant did not object to this question, and Awad answered, "[t]hey said Cregg was in custody and Eric Williams was transported to the hospital." Awad testified that law enforcement on the scene informed him that they had recovered shell casings in a parking lot at the scene, and that his job was to draft a search warrant for Defendant's apartment. After conducting a search of Defendant's apartment and truck, Awad

testified that officers found two iron sights, a wire brush commonly used for cleaning firearms, and a holster for a "smaller pistol." He also testified that the shell casings found at the scene were .25 caliber casings and that officers found an empty box of .25 ammunition below the stairs outside Defendant's apartment. Awad did not discuss the altercation with Defendant because Defendant was intoxicated, and he did not discuss the altercation with Williams who was at the hospital when Awad arrived on scene.

Awad testified that he tried several times to talk to Williams, but that Williams would not cooperate. At one point, Williams' wife called the department upset that Defendant had not been arrested for the shooting. An officer informed her that Williams "did not want to be a victim and cooperate with the investigation." She told the officer that "he would cooperate" and sent two videos from their Ring doorbell camera to law enforcement.

The first of these videos became Exhibit 1 at the hearing. Exhibit 1 shows a person—who Awad identified as Defendant—pacing outside of Williams' door at 6:55 p.m. on October 19, 2024. Defendant is holding "something small and silver" in his right hand, but Awad admits the video is not clear enough to say definitively what Defendant is holding.

The second Ring doorbell video became Exhibit 2. This video shows an individual—who Awad identified as Williams—stepping out of a car and walking toward another individual—who Awad identified as Defendant—at 7:05 p.m.

Defendant's right hand extends and lifts up, and Williams says "[a]re you going to shoot me, cuz?"

Exhibit 3 was a seven-second clip of body camera footage that Awad reviewed. The government used this video so Awad could clearly identify Defendant on the night of the shooting.

Exhibit 4 is a roughly four-minute-long video with a timestamp of 7:18 p.m. In the video, Williams is handcuffed and sitting on a curb while officers treat the gunshot wound on his leg. During the encounter, officers bring Defendant to the same curb and sit him near Williams. Williams then makes statements incriminating Defendant such as, "You gonna use your little-ass gun! Why didn't you shoot me in my face, cuz?" Williams also says, "Now you're bringing this motherfucker around me . . . . Y'all don't bring him around—" and spits towards Defendant before continuing "y'all gonna bring him around me! When he just shot me? Never bring him around me!" Defendant does not react to Williams' accusations.

Before the district court admitted Exhibit 4, Defendant objected. Defendant invoked Federal Rule of Criminal Procedure 32.1(b)(2)(C), which states that a defendant in a revocation hearing may "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." The government argued that Rule 32.1(b)(2)(C) did not bar admission of Exhibit 4 because the Rule permits courts to admit evidence after weighing "the interest of justice," and that the statements are not hearsay because they fall under the excited utterance exception to hearsay.

The district court agreed with the government that the "interest of justice" would allow the court to review the video. The district court referenced that Williams made the statements shortly after the event, that they would be admissible at trial, and that they also would likely fall under the hearsay exception for present sense impressions. Defendant clarified that he was not just objecting to the hearsay component but also invoking his constitutional right to confront the witness. The district court acknowledged that it understood this and overruled the objection.

After hearing the testimony and witnessing the government's video evidence, the district court found that Defendant violated the conditions of his supervised release by a preponderance of the evidence. First, the district court stated that the iron sights found in Defendant's apartment, the wire brush, and the holster do not "win the day," but that they "start[] to add up at this point and make[] you wonder." The district court then stated, as to Exhibits 1 and 2, that evidence shows Defendant approaching Williams' apartment, holding something in his hand, and then raising the item in his hand in a way that you would if you were pointing a firearm at someone. The district court then explained that "[i]t becomes pretty telling" that Defendant is pointing something at Williams and "Mr. Williams ends up shot that night." The district court ended with Exhibit 4, stating that "[t]he fact that Mr. Williams is saying . . . that [Defendant] shot him, and [Defendant] says nothing is odd to me." The court went on: "[i]t's clear to me well beyond a preponderance of the evidence that [Defendant] violated the terms and conditions of his supervision

6

and he shot Mr. Williams. I mean what are we doing here, [Defendant]? You must think the court is awfully foolish."

The district court revoked Defendant's supervised release and sentenced him to 30 months' imprisonment. Defendant appealed.

## II.

## A.

Defendant challenges the district court's revocation determination. The government's burden of proof for a supervised release violation is preponderance of the evidence. 18 U.S.C. § 3583(e)(3); see, e.g., United States v. Adams, 888 F.3d 1134, 1138 (10th Cir. 2018). "We review the district court's decision to revoke supervised release for abuse of discretion." United States v. Jones, 818 F.3d 1091, 1097 (10th Cir. 2016) (quoting United States v. LeCompte, 800 F.3d 1209, 1215 (10th Cir. 2015)). Abuse of discretion is also the applicable standard when we review a district court's decision to allow testimony during a revocation hearing. See United States v. Faunce, 66 F.4th 1244, 1257 (10th Cir. 2023) (citing United States v. Henry, 852 F.3d 1204, 1207 (10th Cir. 2017)). A court abuses its discretion where its decision is "arbitrary or capricious or results in a manifestly unreasonable judgment." Id. (citing United States v. Weidner, 437 F.3d 1023, 1042 (10th Cir. 2006)). "Legal questions related to revocation of supervised release are reviewed *de novo*," and if the district court commits a legal error, then the district court "necessarily abuses its discretion." Jones, 818 F.3d at 1097.

7

B.

Defendant raises just one issue on appeal: whether the district court erred by admitting Exhibit 4 against his Rule 32.1(b)(2)(C) objection.  Rule 32.1(b)(2)(C) entitles releasees to "an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." The advisory committee notes further explain that, when a releasee asserts the right to cross-examine an adverse witness, "[t]he court is to balance the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it."  Jones, 818 F.3d at 1098 (quoting Rule 32.1 advisory committee's notes to 2002 amendment).  For purposes of this appeal, we assume that the district court did not adequately balance these interests and erred in admitting Exhibit 4 in its entirety.

But even if the district court abused its discretion, we "disregard preserved trial errors that do not affect substantial rights."  Jones, 818 F.3d at 1101 (citing 28 U.S.C. § 2111; Fed. R. Crim. P. 52(a)).  We reverse constitutional errors "unless the [g]overnment can prove harmlessness beyond a reasonable doubt."[1]  Id. (citing Chapman v. State of Cal., 386 U.S. 18, 24 (1967)).  But we note that unlike the government's beyond a reasonable doubt burden of proof for a criminal conviction,

---

[1] We have not addressed whether an error in the application of Rule 32.1(b)(2)(C) is constitutional or nonconstitutional.  And we need not do so in this case.  Even assuming error in balancing the interests, and assuming that error was constitutional in nature, the district court's consideration of Exhibit 4 was harmless beyond a reasonable doubt.

the burden of proof for a supervised release violation is preponderance of the evidence. 18 U.S.C. § 3583(e)(3).

Thus, to establish harmless error for a constitutional error, the Government here needed to show beyond a reasonable doubt only that, absent Exhibit 4, the district court still would have found by a preponderance that the evidence supported revocation of Mr. Gaines's supervised release. We conclude that if the district court would not have admitted and considered Exhibit 4, it still would have reached the same result beyond a reasonable doubt. Considering the record evidence in its entirety, the district court knew that officers on the scene briefed Awad and told him that the shooting involved Defendant and Williams and that Defendant was in custody and Williams was in the hospital—inferring that Defendant was the shooter. The district court also knew that officers located spent .25 caliber shell casings and an empty .25 caliber ammunition box at the scene, as well as an empty holster for a "smaller pistol" in Defendant's truck. They also found firearm accessories and cleaning equipment in Defendant's apartment. Exhibit 1 showed a video of Defendant pacing with a silver object. Exhibit 2 showed a video of Defendant pointing his arm at Williams and Williams asking Defendant if he was going to shoot him. Exhibit 3 clearly identified Defendant at the scene.

At the hearing, the district court considered all the evidence that law enforcement found in Defendant's truck and Defendant's apartment. The court said that although this evidence alone did not "win the day," it "start[s] to add up at this point and makes one wonder." The district court then considered the videos from

9

Exhibits 1 and 2. The district court said Defendant was outside of Williams' apartment holding an item that looked like a gun, that the two had a verbal confrontation, and that Defendant raised his hand as one would point a firearm at someone. At this point, the district court said, "[i]t becomes pretty telling to me that he has the motion and indicators that he's pointing something at Mr. Williams. Lo[] and behold Mr. Williams ends up shot that night." The district court did not consider Exhibit 4 until after making these statements. And the district court knew, without Exhibit 4, that officers on the scene told Awad that Defendant was in custody for the shooting incident and that Williams, the shooting victim, was in the hospital. Taken as a whole, this evidence provides a basis for the district court, without considering Exhibit 4, to conclude that Defendant violated the terms of his supervised release by shooting Williams.[2]

The district court would have made the same decision without admitting or considering the testimonial statements in the video of Williams exclaiming that Defendant shot him.

---

[2] The Confrontation Clause requires a district court to exclude only "testimonial" statements. Crawford v. Washington, 541 U.S. 36, 68 (2004). For purposes of addressing Defendant's argument, we assume the district court erred by admitting the testimonial statements in Exhibit 4. But, even without relying on the testimonial statements in Exhibit 4, the recording suggests Defendant shot Williams. The video shows Defendant and Williams together after the shooting with Williams having an injured leg. This visual depiction creates a permissible inference that Williams was the person shot and that Defendant shot him without considering Williams' testimonial statements.

So, we conclude that any error in admitting and considering Exhibit 4 was harmless beyond a reasonable doubt.

AFFIRMED.

Entered for the Court

Joel M. Carson III
Circuit Judge